**UNITED STATES of America, Plaintiff,**

v.

**EXECUTIVE AUTO HAUS, INC. and Frank C. Holtham, Sr., Defendants.**

**No. 6:00–CV–154–ORL18KRS.**

United States District Court, M.D. Florida, Orlando Division.

June 28, 2002.

Scott M. Grossman, Tammie R. Adams, U.S. Dept. of Justice Tax Division, Washington, DC, for Plaintiff.

James F. Page, Jr., Gray, Harris & Robinson, P.A., Orlando, FL, Leslie Stolbof Sinemus, South Orange, NJ, William A. Boyles, Gray, Harris & Robinson, Orlando, FL, for Defendants.

## ORDER

PRESNELL, District Judge.

THIS CAUSE comes before the Court on the following matters:

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. 36, filed February 4, 2002);

(2) Defendant's Motion for Summary Judgment (Doc. 43, filed February 28, 2002).

(3) Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 51, filed March 15, 2002).

## I. BACKGROUND

Frank C. Holtham, Sr. ("Holtham") was the president and controlling shareholder of Executive Auto Haus, Inc. ("EAH"), a luxury automobile dealership incorporated on August 30, 1984. Holtham also owned Executive Auto, Inc. ("EA"), another automobile dealership. On September 23, 1993, EAH and EA jointly sold their assets and inventory to Cocoa Investment for $2,910,866.50. Upon closing, EAH received $244,214.62 in net proceeds, an undetermined amount of which represented

proceeds from EA's sale,[1] which was deposited into EAH's bank account. From this amount, EAH paid Jack Hamell & Associates a $110,000 commission for brokering the sale.[2] EAH then distributed the remaining $134,214.62, the amount at issue in this case, to Holtham, who deposited the funds it into a personal bank account.

Holtham contends that he used this money to satisfy EAH's outstanding known creditors and that Cocoa Investment would not have purchased EAH and EA's assets if Holtham had not assured them such known creditors would be reimbursed. Holtham indicates that EAH had five known creditors.[3] First, EAH owed landlord David Catalano $100,000 for failure to pay rent when EAH was first incorporated. EAH and Catalano reduced this debt to a note, on which Holtham cosigned. At all times prior to the sale of its assets, EAH made interest payments on the note. Holtham assumed primary responsibility to pay the principle on the note when Cocoa Investments acquired EAH and by October 1996, satisfied the note. Second, EAH owed Holtham approximately $700,000 for lending money to EAH when it was declared "out of trust" by its floor-plan provider, Barnett Bank. Barnett Bank accepted a $700,000 check from Holtham, who immediately hired a brokerage firm in an attempt to sell EAH and recoup his loan. Third, EAH was potentially liable in the amount of $100,000 to Dusty Troyer & Associates, the brokerage firm originally retained to sell EAH.

Upon EAH's sale, Holtham assumed responsibility for this potential liability, eventually settling the ensuing litigation for $20,000. Fourth, EAH owed attorney Stanley Goldsmith $47,575.46 in fees involved in EAH's sale. Fifth, EAH owed attorney Stanley Goldsmith $6,032.13 in fees for the Dusty Troyer & Associates litigation. These five obligations represent the only creditors known to EAH or Holtham at the time of EAH's sale. It is undisputed that Holtham was unaware that EAH was indebted to the United States of America ("Plaintiff"), and had no reason to be aware of such indebtedness, at the time EAH was sold.[4]

At approximately the same time Cocoa Investment purchased EAH and EA, the Internal Revenue Service ("IRS") began investigating Charles Prescott Lunt ("Lunt"), an EAH employee, for unpaid excise taxes. Lunt's actions caused EAH to understate its liability to Plaintiff for federal excise taxes due on automobile sales, Lunt eventually pled guilty to aiding and assisting in preparation of false income tax returns on May 22, 1996. In 1995, the IRS levied approximately $130,000 in tax assessments for the unpaid taxes accrued between March 1991 and September 1993. EAH agreed to extend the statute of limitations for the earliest tax periods; therefore, all liabilities were timely assessed. Plaintiff demanded $247,275.69 in unpaid taxes, interest and penalties from EAH and Holtham, an acknowledged "insider"[5] of EAH.[6]

1. The exact percentages of the net proceeds attributable to EAH and EA is a disputed issue of fact not material for the purposes of this order.

2. Plaintiff concedes that this payment was in satisfaction of a legitimate obligation of EAH.

3. Plaintiff does not dispute that these debts existed, but rather contends that EAH re-

ceived no benefit from Holtham's actions. The Court rejects this assertion for reasons detailed below.

4. Both parties stipulated to this fact in the joint pre-trial statement. (Doc. 53 at 14.)

5. Under the Uniform Fraudulent Transfer Act, if the debtor is a corporation, an "insider" is defined as: 1) a director of the debtor; 2) an

## II.  DISCUSSION

### A.  Summary Judgment

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *e.g., Edwards v. Acadia Realty Trust, Inc.,* 141 F.Supp.2d 1340, 1344–45 (M.D.Fla.2001). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy its burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories or admissions that

designate specific facts indicating there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B.  Uniform Fraudulent Transfer Act

Plaintiff alleges that the $134,214.62 transfer of EAH's remaining assets to Holtham violated the Uniform Fraudulent Transfer Act ("UFTA"). Fla. Stat. ch. 726.101–726.201 (West.2001). Plaintiff asserts three theories for recovery under UFTA: 1) EAH fraudulently transferred $134,214.62 to Holtham with actual intent to hinder, delay or defraud Plaintiff in violation of Fla. Stat. ch. 726.105(1)(a); 2) in a transaction that rendered EAH insolvent, it fraudulently transferred Holtham $134,214.62 without receiving reasonably equivalent value in violation of Fla. Stat. ch. 726.106(1); or 3) Holtham, an insider, fraudulently accepted a $134,214.62 transfer to satisfy an antecedent debt from the insolvent EAH when Holtham had reasonable cause to believe EAH was insolvent at the time in violation of Fla. Stat. ch. 726.106(2).

#### 1.  Fla. Stat. ch. 726.105(1)(a): Intentional Fraud

A transfer from a debtor to a creditor is fraudulent if the debtor makes the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor...." Fla. Stat. ch. 726.105(1)(a). There is no evi-

---

officer of the debtor; 3) a person in control of the debtor; 4) a partnership in which the debtor is a general partner; 5) a general partner in a partnership described in (4), or 6) a relative of a general partner, director,

officer or person in control of the debtor. Fla. Stat. ch. 726.102(7)(b)(1–6) (West 2001).

**6.**  EAH was administratively dissolved on August 25, 1995.

dence that EAH transferred the proceeds of sale to Holtham with an actual intent to hinder, delay or defraud Plaintiff. In fact, it is undisputed that both EAH and Holtham had no knowledge of the taxes accrued due to the criminal activity of an EAH employee at the time transfer was made.

The Uniform Fraudulent Transfer Act lists 11 factors which, among other things, the Court may utilize to determine if actual intent existed. *See Id.* at ch. 726.105(2)(a-k). Plaintiff argues that the presence of several of these "badges of fraud" demonstrates EAH's intent to defraud Plaintiff. While a single badge of fraud may only create a suspicious circumstance, several considered together may allow an inference of fraud. *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498 (11th Cir.1997). Courts, however, do not determine the presence or absence of actual intent in a vacuum. *Id.* Rather, courts take all facts surrounding the conveyance into account. *Id.* at 1498–99.

In this case, by the admission of both parties, EAH could not have possessed the actual intent to defraud Plaintiff because EAH was undisputedly unaware of the unpaid taxes. Badges of fraud are merely factors which aid the Court in determining whether intent existed. Their limited presence in this situation is not determinative of actual intent.

### 2. Fla. Stat. ch. 726.106(1)

A transfer from a debtor to a creditor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time. Fla. Stat. ch. 726.106(1). Under UFTA, Plaintiff's claim may be deemed to have arisen, even though EAH was unaware of its tax liability at the time of transfer.[7] EAH, however, received reasonably equivalent value for the transfer to Holtham and was not insolvent or rendered insolvent thereby.

#### a. Reasonably Equivalent Value

■ As a matter of law, the Court finds that Holtham's agreement to satisfy EAH's known creditors for $134,214.62 constituted reasonably equivalent value for the transfer. Although Plaintiff concedes that the actual amount at issue in this case may be less than $134,214.62, owing to the joint sale of EAH and EA, the obligations that Holtham assumed exceeded the entire transfer amount.

Even upon excluding the $700,000 loan Holtham made to EAH that was forgiven by the transfer, EAH had over $253,000 of outstanding debt to known third party creditors. In exchange for $134,214.62, EAH acquired forgiveness of these debts. Undisputed evidence shows that Holtham satisfied the $100,000 Catalano loan, brokered and paid a $20,000 to Dusty Troyer & Associates, and paid over $53,000 to attorney Stanley Goldsmith.

Plaintiff relies upon a Bulk Sales Affidavit executed by Holtham in contending that EAH had no debt at the time of the closing with Cocoa Investments. Plainly, EAH had five outstanding known creditors. Equally plainly, the only reason EAH had no debt when it closed with Cocoa Investments is because Holtham assumed

---

7. UFTA defines "claim" as: "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Fla. Stat. ch. 726.102(3). The Court notes that this broad definition seems inconsistent with the statutory intent, because a claim which has accrued, but which is unknown to the debtor, cannot be "fraudulently" disfavored.

all known debts. Undeniably, acquiring a company without any known creditors is more attractive to a potential buyer than acquiring a company with close to $1 million in outstanding debt. The Court holds that Holtham's assumption of EAH debts constituted reasonably equivalent value for EAH.

### b. Insolvency

■ UFTA offers two explanations of insolvency. First, "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Fla. Stat. ch. 726.103(1). Second, "a debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." *Id.* at 726.103(2). When EAH transferred its remaining assets to Holtham in exchange for Holtham's agreement to satisfy outstanding creditors, it became devoid of assets or liabilities.[8] Other than the taxes owed to Plaintiff, which would not be disclosed until more than a year later, all EAH's outstanding debts were satisfied. Its assets equaled its debts, and EAH insured that all its debts were paid as they became due by transferring the remainder of its assets to Holtham. By the very nature of Holtham's undertaking, he insured EAH's solvency.

### 3. *Fla. Stat. 726.106(2)*

A transfer from a debtor to a creditor is fraudulent as to a creditor whose claim arose before the transfer was made if: 1) the transfer was made to an insider; 2) for antecedent debt; and 3) the debtor was insolvent or the insider had reasonable cause to believe the debtor was insolvent. Fla. Stat. ch. 726.106(2). Holtham was an undisputed insider and the transfer was made at least partially for an antecedent debt. The Court's discussion of Fla. Stat. ch. 726.106(2), however, establishes that EAH was not insolvent at the time of the transfer.

Furthermore, Holtham had no reasonable cause to believe EAH was insolvent, as the very purpose of the transfer was to erase EAH's known liabilities. Plaintiff concedes that Holtham had no knowledge of the unpaid taxes, the existence of which Plaintiff alleges rendered EAH insolvent. This argument is logically inconsistent and cannot prevail. For these reasons, Fla. Stat. 726.106(2) is inapplicable.

### C. Trust Fund Theory of Liability

Finally, Plaintiff asserts the "trust fund" theory of recovery against Holtham. "Under the trust fund theory, a shareholder receiving corporate assets upon dissolution of the corporation is liable for corporate debts if the corporation were either insolvent at the time of the transfer or rendered insolvent thereby." *United States v. Samples Contracting Co.,* 1977 WL 1322 at *1 (N.D. Ga. Dec 16, 1777). Under this theory, stockholders are not ordinary transferees of corporate assets, but receive it subject to the pro rata liabilities of the corporation. *Id.* (*citing Neill v. Phinney,* 245 F.2d 645, 651 (5th Cir.1957)).

■ In this case, Holtham did not receive corporate assets on the basis of his status of EAH stockholder. Rather, he received $134,214.62 in exchange for satisfying the outstanding known debts of EAH. Additionally, the Court has ruled that the transaction between EAH and Holtham did not render EAH insolvent. Therefore, Plaintiff cannot recover under the trust fund theory of liability.

---

**8.** To conclude that, in hindsight, EAH was insolvent because of an unknown creditor's claim would require a tortured reading of the statute. Certainly, nothing is gained by doing a retrospective analysis of EAH's solvency at the time of the transfer. As defined by the statute, EAH was not insolvent at the time of the transfer.

### III. CONCLUSION

The Court finds that the undisputed facts and the reasonable inferences drawn therefrom do not establish a genuine issue of material fact that would justify bringing this lawsuit to trial. Based on the foregoing discussion and upon careful considerations of the record, arguments of counsel, and all relevant law, the Court rules as follows:

it is **ORDERED** and **ADJUDGED** that:

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. 36, filed February 4, 2002) is **DENIED**.

(2) Defendant's Motion for Summary Judgment Doc. 43, filed February 28, 2002 is **GRANTED**.